**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
        **JUDGE**

## LETTER OPINION

October 23, 2006

Joel M. Sollow
Freeman & Bass, P.A.
24 Commerce Street
Newark, New Jersey 07102

    *(Attorney for Plaintiff)*

Som Ramrup
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278

    *(Attorney for Defendant)*

    **RE:**     **Soto v. Commissioner of Social Security**
              **Civ. No. 05-2576 WJM**

Dear Counsel:

    Plaintiff Judith Soto ("Soto") brings this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

### Background

    Soto applied for DIB and SSI on October 15, 2002, alleging disability resulting from

1

"diabetes, high blood pressure, nerves, arthritis, and seizures." (Pl.'s Mem at 4.)[1] In a final decision by the Commissioner, dated December 23, 2004, Administrative Law Judge Richard L. DeSteno (the "ALJ") denied Soto's claim. (Tr. 8-21.) Applying the familiar five-step analysis for determining disability claims, the ALJ first found that Soto had not engaged in any substantial activity since her alleged onset date. (Tr. at 17.) Next, he found that Soto suffered from a severe impairment involving a seizure disorder, diabetes, and depression. (Tr. at 17.) At the third step, the ALJ determined that none of these impairments met or equaled in severity the Listing of Impairments located at Appendix 1 to 20 C.F.R. pt. 404, subpt. P. (*See* Tr. at 17-18.) Then, at the fourth step, he found that Soto retained the residual functional capacity to perform work involving lifting and carrying of objects weighing up to 20 pounds, frequently lifting and carrying objects weighing up to 10 pounds, and walking and sitting up to six hours in an eight hour work day. (Tr. at 19.) In addition, he found that Soto could perform the simple tasks associated with unskilled work not involving exposure to heights or dangerous machinery. (Tr. at 19.) Since this comported with Soto's previous work as a housekeeper and laundry folder, the ALJ found her not disabled. (Tr. at 19.)

Soto appeals this ruling. She argues that: (1) the ALJ did not adequately consider her depression; (2) the ALJ improperly assessed the credibility of her complaints; and (3) newly discovered evidence warrants a remand of this case. Soto's appeal is now before the Court.

### Standard of Review

This Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence. *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004).

### Discussion

**I.    Substantial Evidence Supports the ALJ's Decision Concerning Soto's Depression.**

Soto argues that substantial evidence does not support the ALJ's decision regarding her

---

[1] References to ("Pl. Mem.") are to Plaintiff's Memorandum of Law. References to ("Tr.") are to certified transcript of the entire record of the proceedings in this case.

2

depression. Soto bases this attack on two grounds. First, she argues that the ALJ improperly evaluated a report by her consultative physician, Dr. Aryeh Klahr ("Dr. Klahr"). Second, she contends that the ALJ rejected all evidence of psychiatric problems in the record, in particular certain state agency psychiatric reports, without pointing to any contrary evidence. (Tr. 170-174.) As will be seen, the Court disagrees with both arguments.

### A. The ALJ's Evaluation of Dr. Klahr's Report

Dr. Klahr conducted a consultative psychiatric evaluation of Soto.[2] He diagnosed her with "major depression." (Tr. at 173.) In his report, Dr. Klahr made numerous observations of Soto. (Tr. at 170-174.) For instance, he remarked that Soto made poor eye contact, appeared depressed, moved slowly, and did not want to talk about her problems. (Tr. at 172.) Furthermore, he noted that Soto was "guarded," had a "blunted" affect, had a paucity of content in her speech, complained of sleep problems, had feelings of suicidal thoughts, alluded to a possible suicide attempt the previous week, and had impaired short term memory and judgment. (*See* Tr. at 170-173.) The report further indicates that Dr. Klahr was so apparently alarmed at Soto's potential for suicide that he summoned an ambulance and transferred her to an emergency room. (Tr. at 173-174.) Dr. Klahr then concluded that, "although [Soto] is able to follow and understand simple instructions, she would have difficulty even performing simple tasks in a structured environment with a sympathetic supervisor" (Tr. at 173.) Furthermore, he reported that Soto "would not be able to perform more complex tasks in a competitive work environment." (Tr. at 173.)

In evaluating the report, the ALJ noted that he was very familiar with Dr. Klahr's work over the years. (Tr. at 18.) The ALJ then remarked, "[r]egardless of [Dr. Klahr's] objective findings in the examination and his diagnosis, he has always assessed that the claimant was restricted to performing simple tasks in a structured environment under a sympathetic supervisor." (Tr. at 18.) The ALJ further commented that, "[t]his extreme assessment, which essentially would limit the individual to performing work in a sheltered workshop, has seldom, if ever, been supported by the results of his examination." (Tr. at 18.) Ultimately, the ALJ concluded that "[t]he same applies in the instant case," and that "[d]espite the relatively minimal findings in his examination, he again has assessed these extreme limitations." (Tr. at 18.) Accordingly, the ALJ gave "no significant weight" to Dr. Klahr's report. (Tr. at 18.)

Soto argues that this review was improper. She contends that, by interjecting his own personal feelings about Dr. Klahr into the proceedings, the ALJ transformed himself from "an impartial adjudicator into a witness." (Pl.'s Mem. at 13.) Soto argues that, as a result, the ALJ's evaluation of her depression was not based upon substantial evidence. This Court disagrees. Putting aside the ALJ's comments regarding Dr. Klahr's report, the Court nevertheless finds that his evaluation of Soto's psychiatric impairment was based upon substantial evidence. First and

---

[2] A consultative examination is a mental or physical examination from a treating physician or another medical source. 20 C.F.R. § 404.1519 (2006).

3

foremost, from reading the ALJ's discussion of the report, it is clear that he did not base his assessment of the report entirely upon his previous experience with Dr. Klahr. In fact, the record shows that he examined the report and determined that it contained "minimal findings." (Tr. at 18.)

Furthermore, numerous objective findings support the ALJ's conclusion. First, the ALJ noted that Soto did not receive treatment from a mental health professional. (Tr. at 18.) Such treatment is one of the factors to be assessed in a disability determination. *See* 20 C.F.R. § 404.1529(c)(3)(v); *see also Izzo v. Comm'r of Soc. Sec.*, No. 05-3420, 2006 U.S. App. LEXIS 16282, at *15 (3d Cir. June 27, 2006) (finding that substantial evidence supports ALJ's finding that claimant was not disabled because claimant did not receive any treatment for mental impairment since two years prior to hearing). Second, the ALJ noted that Soto denied any symptoms of depression, anxiety or suicidal ideation when transferred to the emergency room immediately following her consultative examination with Dr. Klahr, and that the hospital discharged Soto without any psychiatric diagnosis. (Tr. at 15, 160.) Third, the ALJ noted that Dr. Klahr observed that Soto could follow and understand simple directions. (Tr. at 15, 173.) As the Commissioner correctly observes, this is consistent with the basic mental demands of competitive, remunerative, unskilled work. *See* Social Security Ruling ("SSR") 85-15 (noting that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions...."); *see also* SSR 96-9p (same). These facts undermine Dr. Klahr's conclusions, and substantially support the ALJ's decision to discredit the report.[3]

### B.    Rejection of State Agency Psychiatric Reports

Soto also argues that the ALJ rejected state agency psychiatric reports "without pointing to any evidence to the contrary." (Pl.'s Mem. at 14.) According to Soto, these reports demonstrate that she "often has moderate difficulties in maintaining social functioning, often has deficiencies in maintaining concentration, persistence or pace, and has moderate limitations in the ability to complete a normal workday or workweek without interruptions from

---

[3]Soto also argues that the ALJ should have ordered a consultative examination by an expert if he felt the need to test Dr. Klahr's report. When a claimant's medical records fail to provide sufficient information to determine whether the claimant is disabled, the Social Security Administration will pay for a consultative examination of the claimant. 20 C.F.R. §§ 404.1512(f), 1517 (2006). Under the Code of Federal Regulations, a consultative examination is appropriate when: (1) "the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on [the claimant's] claim"; (2) the evidence that is needed is not contained in the claimant's medical records; (3) relevant medical evidence could not be obtained for reasons that were beyond claimant's control; (4) highly technical and specialized medical evidence is not available; (5) the agency is not able to resolve a conflict, inconsistency, ambiguity, or insufficiency in the evidence by contacting claimant's medical source; or (6) the claimant's condition may have changed in a way that is likely to affect her ability to work. *Id.* § 404.1519a(b) (2006). Upon reviewing the record, it is clear that the claimant's records were more than sufficient to determine whether Soto was disabled. Furthermore, the Court does not find that any specialized knowledge was necessary here, nor was there any inconsistency or ambiguity in the evidence. Therefore, the Court finds nothing in the record indicating that the ALJ should have gone further and ordered a consultative examination.

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Pl.'s Mem. at 14) (citing Tr. at 201-208). Soto contends that the ALJ improperly rejected these reports. The Court disagrees.

   "[A] state agency medical assessment is given weight only when it is supported by the evidence...." *Neal v. Comm'r of Soc. Sec.*, 57 Fed. Appx. 976, 980 (3d Cir. 2003). Here, the ALJ's opinion clearly shows that he considered the state agency assessments, but specifically rejected them because: (1) Soto does not receive treatment from a mental health professional; and (2) her activities of daily living are not significantly compromised by her medical impairment. (Tr. at 19.) Additionally, the ALJ rejected these reports because the state agency physicians were not afforded the opportunity to question the claimant or assess her credibility. This was perfectly proper. *See* SSR 96-6p; *see also* 20 C.F.R. § 404.1527(b)(2). The ALJ clearly considered these reports and gave specific reasons for discrediting them, all of which were supported by the record. The Court finds no error on this ground.

* * * *

   In sum, the Court finds that substantial evidence supports the ALJ's evaluation of Soto's depression. Accordingly, Soto's argument on this ground is denied.

**II.     The ALJ Properly Evaluated Soto's Credibility.**

   At step three of the familiar five-step process for assessing disability claims, the ALJ evaluated the credibility of Soto's complaints of pain and other limitations. (*See* Tr. at 17-18.) He found them not credible. (Tr. at 17.) In reaching this conclusion, the ALJ first set forth the various factors to consider under Social Security Ruling ("SSR") 96-7p and 20 C.F.R. §§ 404.1529, 416.969, when assessing credibility. (Tr. at 17.) Then, he assessed Soto's complaints of diabetes, high blood pressure, arthritis, and pain. The ALJ concluded that objective evidence contradicted each of these complaints. In particular, he found that: (1) Soto's diabetes and high blood pressure were managed with pharmacological therapy; (2) no evidence existed of any end-organ damage caused by her diabetes or high blood pressure; (3) her complaints of disabling arthritis, low back pain, bilateral knee pain, and leg pain were contradicted by medical evidence showing that she had a full range of motion throughout with no evidence of redness, heat, swelling or effusion; (4) there was no evidence of strength, sensory, or motor deficits; and (5) no diagnostic records substantiated these complaints and that Soto only takes Celebrex and Tylenol for pain. (Tr. at 17-18.)

   Furthermore, regarding Soto's seizure disorder, the ALJ found that it was "well controlled with medication" and that she only required two hospital treatments for this disorder. (Tr. at 18.) Furthermore, he noted that, even though Soto was hospitalized for complaints of headaches, a neurological examination was non-focal and there was a question of her compliance with prescribed seizure medication. (Tr. at 18.) Regarding Soto's claims of depression, the ALJ noted that "the claimant does not receive treatment from a medical health professional." (Tr. at

5

18.)  In addition, he noted that, "[w]hile a December 2002 consultative examination demonstrated some depression, it was not of a level to preclude work related activity."  (Tr. at 18.)  Furthermore, as discussed earlier, the ALJ evaluated Dr. Klahr's report and found that Dr. Klahr "noted that [Soto] was able to follow and understand simple directions."  (Tr. at 18.)  Moreover, regarding Soto's claims of depression, the ALJ remarked that "[d]espite her complaints, she is able to live alone, cook and perform household chores, take public transportation, independently maintain personal hygiene, watch television, and manage her money."  (Tr. at 18.)

Soto argues that the ALJ's assessment of her credibility was improper because he did not follow the requirements of Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186.  (Pl.'s Mem. at 15.)  Specifically, she contends that the ALJ failed to consider: (1) observations about her recorded by Social Security Administration ("SSA") employees during interviews; (2) that she received psychiatric treatment from doctor between 1999-2002; (3) her statements in response to a state agency function report; (4) her statements in a reconsideration disability report; and (5) her obesity.  Soto claims that the ALJ's failure to evaluate these facts violated SSR 96-7p, which provides guidelines for ALJ's to follow when assessing the credibility of a claimant's statements.

Under the applicable Social Security regulations, a claimant's allegations of pain and other symptoms must be supported by objective medical evidence.  *See* 20 C.F.R. § 404.1529. "If an ALJ concludes that the available medical findings and evidence could reasonably cause a claimant's alleged subjective symptoms the ALJ must attempt to ascertain and evaluate the severity of the claimant's pain as well as the degree to which it may limit the claimant's ability to perform various types of work."  *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).  "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).  "When an ALJ undertakes this credibility determination, 20 C.F.R. § 404.1529(c) and [SSR] 96-7p provide necessary guidance." *Scatorchia*, 137 Fed. Appx. at 471.  "SSR 96-7p articulates several factors for an ALJ to consider in making the credibility determination about pain and subjective symptoms, including, *inter alia*: 'the individual's daily activities' and 'the consistency of the individual's own statements.'"  *Id.*  This ruling is binding on the ALJ.  *Walton v. Halter*, 243 F.3d 703, 708 (3d Cir. 2001) (citing 20 C.F.R. § 402.35(b)(1)).

SSR 96-7p states, in relevant part, that:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant

6

>information in the case record.

SSR 96-7p.  Furthermore, this ruling provides a list of factors to consider in assessing the credibility of an individual's statements about pain or other symptoms.  These factors include:

> [S]tatements and reports from the individual ... about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

*Id.*  Moreover, the ruling states that an ALJ "must also consider any observations about the individual recorded by [SSA] employees during interviews, whether in person or by telephone." *Id.*

Soto correctly notes that the ALJ failed to consider observations contained in the record by SSA employees during their interviews with Soto.  Furthermore, Soto accurately states that the ALJ never mentioned reviewing the state agency function report or the reconsideration disability report, nor did he mention the psychiatric treatment she apparently received from 1999-2002.  Nevertheless, from a review of the record and the ALJ's decision, it is clear that remand is not appropriate because consideration of these facts would not have changed the outcome of the case.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with SSR would not have changed the outcome of the case).  First, while consideration of the SSA employees' observations would have supported Soto's complaints of pain and symptoms, the ALJ found that objective medical evidence overwhelmingly outweighed her complaints of pain or other symptoms.  (*See* Tr. at 17-18.)[4]  We cannot see how consideration of these observations, therefore, would have changed the ALJ's decision in the slightest.  Likewise, the ALJ's failure to consider Soto's statements in the reports could not have affected the outcome of her case.  Those statements merely mimicked the allegations she already made at various other times throughout this proceeding.  (*See* Tr. at 92-95.)  Moreover, the Court cannot fault the ALJ for failing to evaluate the psychiatric treatment Soto apparently received from 1999-2002.  This doctor's name only arises in one disability report, which merely states that Soto saw this doctor for "nerves and mental impairment."  (Tr. at 86.)  Nothing more.  There is no mention of what his findings consisted of, or how they could have affected the ALJ decision.

Finally, Soto's claim regarding the ALJ's failure to consider her obesity lacks merit.  In *Rutherford*, the Third Circuit held that an ALJ did not err in failing to consider a claimant's obesity where the claimant failed to raise the issue before the ALJ and failed to describe how

---

[4]In particular, a December 2002 consultative examination by Dr. Joyce Nkwonta indicated that Soto was not as disabled as she claimed.  (*See* Tr. at 176-77.)  In fact, Dr. Nkwonta concluded that Soto should only avoid operating or working machinery due to her epileptic seizures, and that her examination revealed only mild restrictions for activities requiring squatting because of knee pain.  (Tr. at 178.)

consideration of this condition would have affected the outcome of her case. *Rutherford*, 399 F.3d 546, 553. Similarly, Soto never mentioned obesity as a factor contributing to her inability to work, and she does not state how consideration of this factor would have affected the five-step analysis undertaken by ALJ DeSteno. Soto only states that her obesity "impacts, particularly, on orthopedic and psychiatric impairments." (Pl.'s Mem. at 17-18.) Borrowing the words of *Rutherford*, the Court notes that this "generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments." *Rutherford*, 399 F.3d at 553. Accordingly, Soto's argument on this ground is denied.

* * * *

In sum, the Court finds that the ALJ's properly determined the credibility of Soto's complaints and that substantial evidence supports his determination. Accordingly, Soto's argument on this ground is denied.

### III.     New Evidence Does Not Warrant a Remand

Soto submits to the Court records from Drs. Andrew Bear, Robert Latimer, and I. Ahmad. She argues that these records constitute new evidence warranting a remand. Specifically, Dr. Bear's report states that Soto suffers from bilateral carpal tunnel syndrome, cervical and lumbar radiculitis, and spondylitis. Furthermore, Dr. Latimer's report concludes that Soto suffers from psychiatric problems. Finally, Dr. Ahmad's report states that Soto exhibits a limited range of motion of the spine and pain in the arms and legs with a weak grasp.

Under sentence six of § 406(g), a remand is warranted when new evidence becomes available, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). For evidence to be "material," it must relate to the time period for which the benefits were denied, and ... not concern evidence of a later acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec. of HHS*, 745 F.2d 831, 833 (3d Cir. 1984).

Remand is not warranted based on these records. The ALJ heard oral argument on November 23, 2004, and issued his decision on December 23, 2004. The reports of Drs. Latimer and Ahmad postdate this decision by nearly six months. Therefore, if those reports are indicative of anything, it is a "subsequent deterioration of the previously non-disabling condition." Furthermore, Dr. Bear's report concerns conditions not even raised by Soto before the ALJ. Accordingly, they are not material. *See Smith v. Comm'r of Soc. Sec.*, 80 Fed. Appx. 268, 270 (3d Cir. 2003) ("Evidence that is not in front of the ALJ cannot be used to argue that the ALJ's decision was erroneous."). Finally, Soto fails to offer any good cause for failing to incorporate any of these records in the prior proceeding. Instead, Soto only argues that she received "limited assistance" by different counsel at the administrative hearing. The record indicates, however,

that her original attorney exercised reasonable diligence in collecting evidence.  Furthermore, ordering a remand here would be contrary to the intent of § 405(g).  *See, e.g., Cruz-Santos v. Callahan*, No. 97-439, 1998 U.S. Dist. LEXIS 5381, at *15 (D.N.J. April 7, 1998) (noting that "[a] remand in this factual scenario would send a clear message that informal de facto appeals can be obtained by simply changing counsel and presenting evidence anew.").

## Conclusion

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**.  An appropriate Order accompanies this Letter Opinion.


s/ William J. Martini
**William J. Martini, U.S.D.J.**